# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLIN M. RANDOLPH,<br><br>    Plaintiff,<br><br>v.<br><br>R. LOZOVOY, et al.,<br><br>    Defendants. | Case No. 1:16-cv-01528-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AS TO PLAINTIFF'S CLAIMS AGAINST DEFENDANTS GREWAL AND CHEN BUT DENIED AS TO PLAINTIFF'S CLAIM AGAINST DEFENDANT LOZOVOY<br><br>(ECF NO. 49)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Colin Randolph ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. "This action now proceeds on plaintiff's first amended complaint on plaintiff's claims against defendants Lozovoy, Grewal, and Chen, for deliberate indifference to serious medical needs in violation of the Eighth Amendment." (ECF No. 14, p. 3).

On January 15, 2019, Defendants filed a motion for summary judgment. (ECF No. 49). Defendants move for summary judgment on the grounds that "(1) Plaintiff failed to exhaust administrative remedies with respect to Defendants Grewal and Chen, because the only appeal he filed concerning the issues raised in the complaint was filed before he saw them; (2) each Defendant provided proper medical care to Plaintiff at the time of treating him; and (3) Defendants are entitled to qualified immunity because they acted reasonably in providing

1

medical care to Plaintiff." (ECF No. 49-1, p. 6).

On February 4, 2019, Plaintiff filed his opposition. (ECF No. 51). Plaintiff admits that he failed to exhaust his administrative remedies as to defendants Chen and Grewal, but argues that the Court should not grant summary judgment to defendant Lozovoy. (Id. at 1-2).

Defendants filed their reply on February 15, 2019. (ECF No. 54).

Defendants' motion for summary judgment is now before the Court. For the reasons that follow, the Court will recommend that Defendants' motion for summary judgment be granted as to defendants Grewal and Chen, but denied as to defendant Lozovoy.

I. **PLAINTIFF'S CLAIMS**

a. Summary of Plaintiff's First Amended Complaint

On or about March 1, 2015, Plaintiff injured his left knee coming down from his assigned upper bunk "where no safely designed way to do so existed or was clearly posted in or out of cell on how to do so." Plaintiff submitted a medical sick call slip requesting medical attention.

On or about March 3, 2015, Correctional Officer Buyard arrived at Plaintiff's cell with a wheelchair and pushed Plaintiff to the doctor's office. While at the doctor's office, Plaintiff met with defendant Nurse Practitioner Lozovoy. Plaintiff described his symptoms. Defendant Lozovoy did not evaluate Plaintiff's injury. Plaintiff asked him for a temporary lower bunk accommodation and wheelchair access for showers as well as adequate pain medication and an X-ray. Defendant Lozovoy denied all the requests, and stated that he had removed Plaintiff's lower bunk accommodation for exercising and since Plaintiff has gout, Plaintiff's joints are prone to flare ups from any trauma. Defendant Lozovoy also told Plaintiff that Plaintiff was already receiving medication for gout and pain, and that Plaintiff had to figure out how to get off his bunk without stressing his joints. When Plaintiff protested that there was no way to get out of the upper bunk without trauma to the joints, defendant Lozovoy told Plaintiff that other inmates are not complaining, and that Plaintiff needed to figure it out.

On or about March 4, 2015, Plaintiff went "man down" and was taken to triage/emergency in a wheelchair, where he was seen by a nurse who evaluated Plaintiff's knee

and scheduled an immediate X-ray. The X-ray came back negative, showing no signs of breaks or fractures. The person who conducted the X-ray told Plaintiff that an MRI would be helpful due to the severe swelling and possible tissue damage. The nurse who evaluated Plaintiff's knee told Plaintiff that he would be seen later by defendant Doctor Chen.

Plaintiff was taken back to his cell and given 400 mg of ibuprofen, which did not reduce the swelling or pain. Because Plaintiff could not get on or off the assigned bunk without assistance, he urinated and defecated on himself.

During daily pill rounds, Plaintiff told Licensed Vocational Nurse Rodriguez that the medication was not working, that Plaintiff needed help getting off his bunk, and that Plaintiff needed her help to get off the bed to use the restroom and shower. Rodriguez refused to give Plaintiff any medical assistance. Plaintiff again urinated and defecated on himself.

Plaintiff submitted several emergency sick call slips.

On or about March 5, 2015, Plaintiff was seen by defendant Grewal, a registered nurse. Plaintiff described his symptoms and his difficulty getting to the bathroom and requested assistance. Defendant Grewal acknowledged Plaintiff's medical history of gout, refused to help Plaintiff access the shower, and denied temporary accommodations.

On March 8, 2015, defendant Grewal changed Plaintiff's medication from ibuprofen to 500mg of naproxen. The swelling on Plaintiff's left knee had increased and the pain was excruciating. Plaintiff told defendant Grewal that naproxen did not work in the past during gout flare ups and he doubted it would work now. Plaintiff told defendant Grewal that he needed help to get off his bed and to a shower. Plaintiff was told that he would be given a walker, an ACE bandage, and ice, so that he could shower and get around the cell to the toilet. Plaintiff again asked for a lower bunk accommodation, but defendant Grewal refused.

Plaintiff continued to suffer excruciating pain and swelling trying to get on and off his bed, and he was not given the walker. Plaintiff was forced to urinate and defecate on himself because defendant Grewal did not issue Plaintiff a walker.

On or about March 10, 2015, Plaintiff saw defendant Chen at the medical clinic. Plaintiff reiterated all of his complaints and asked about an MRI. Defendant Chen refused to

order an MRI.  Dr. Chen acknowledged the treatment that Plaintiff was receiving for gout, and told Plaintiff to figure out a way to live with the upper bunk.  Plaintiff asked for a permanent lower bed to aide in not causing trauma to his joints, but defendant Chen refused.

Plaintiff filed prison grievances.  As a result of the grievances, on March 19, 2015, Dr. Chen ordered that Plaintiff be given a temporary lower bunk.  Plaintiff received a lower bunk on March 20, 2015.  On or about March 27, 2015, Plaintiff was provided a wheelchair to be used to get to showers, yard, and visiting.

### b. Screening Order

The Court screened Plaintiff's First Amended Complaint.  (ECF Nos. 12 & 14).  The Court ordered that on this case proceed on "plaintiff's first amended complaint on plaintiff's claims against defendants Lozovoy, Grewal, and Chen, for deliberate indifference to serious medical needs in violation of the Eighth Amendment," and dismissed all other claims.  (ECF No. 14, p. 3).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### a. Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted.").  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

    a. Plaintiff's Claims Against Defendants Grewal and Chen

Defendants argue that "Plaintiff failed to exhaust administrative remedies with respect to Defendants Grewal and Chen, because the only appeal he filed concerning the issues raised in the complaint was filed before he saw them." (ECF No. 49-1, p. 6).

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (2016). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

As Plaintiff admits that he "did fail to properly exhaust his administrative remedies in regards to Defendant[s] Chen and Grewal" (ECF No. 51, p. 1), the Court will recommend that Defendants' motion for summary judgment be granted as to defendants Chen and Grewal.

### b. Plaintiff's Claim Against Defendant Lozovoy

#### A. *Defendants' Position*

Defendants argue that "[t]he undisputed evidence shows that Nurse Practitioner Lozovoy provided Plaintiff with appropriate medical care at the time he saw him on March 3, 2015. It is undisputed that Lozovoy saw Plaintiff two days after he allegedly injured his knee, the very morning his request was received by the triage nurse. Lozovoy noted Plaintiff's left knee appeared normal, had full range of motion, and that Plaintiff had full strength of his left leg. Based on this evaluation, Nurse Practitioner Lozovoy did not determine Plaintiff had a medical need for a low bunk chrono at that time. Lozovoy advised Plaintiff to avoid triggers and to take Motrin for pain as needed." (ECF No. 49-1, p. 17) (citations omitted).

"Plaintiff's disagreement with Lozovoy regarding his need for a low bunk is insufficient to establish deliberate indifference. In order to prevail on his deliberate indifference claim against Lovozoy, Plaintiff must show that Lozovoy chose [a] course of treatment that was medically unacceptable under the circumstances." (Id.) (citations omitted).

Additionally, Defendants argue that defendant Lozovoy is entitled to summary judgment because Plaintiff cannot show that defendant Lozovoy's actions or inactions caused Plaintiff to suffer any harm. (ECF No. 54, p. 4).

Finally, Defendants argue that defendant Lozovoy is entitled to qualified immunity. (ECF No. 49-1, p. 19). Plaintiff cannot establish that defendant Lozovoy violated his constitutional rights. (Id.). Moreover, defendant Lozovoy acted reasonably. (Id.). "Lozovoy did not prescribe Plaintiff a lower bunk chrono given his assessment that Plaintiff's knee appeared normal and had full range of motion at the time he saw him." (Id.).

### B. *Plaintiff's Position*

On or about March 1, 2015, Plaintiff submitted a sick call slip stating that he injured his left knee coming down off his bed. (ECF No. 51, p. 4). He was seen by defendant Lozovoy on March 3, 2015. (Id. at 5).

Plaintiff arrived at his March 3 appointment with defendant Lozovoy in a wheelchair. (Id. at 14). At the appointment, Plaintiff requested temporary lower bunk accommodations, an x-ray, and a change in medication for pain. (Id. at 14-15). However, Plaintiff was not evaluated to determine whether his claim of a blown-out knee was true. (Id. at 15). Instead, defendant Lozovoy fabricated an evaluation that did not take place. (Id. at 16). Plaintiff was unable to stand or walk (which is why he arrived to the appointment in a wheelchair), yet defendant Lozovoy wrote that Plaintiff's left knee appeared normal, had a full range of motion, and had full strength. (Id.).

Additionally, defendant Lozovoy knew Plaintiff had medical issues because Plaintiff previously had a lower bed accommodation, which defendant Lozovoy claimed was no longer needed four years earlier. (Id. at 15-16).

While defendant Lozovoy did not evaluate Plaintiff, other medical professionals did. (Id.). The x-ray technician noted joint effusion. (Id.). Nurse Grewal noted swelling and tenderness, and ordered accommodations. (Id. at 16). Doctor Chen issued Plaintiff a lower bunk accommodation. (Id.).

Finally, Plaintiff argues that defendant Lozovoy is not entitled to qualified immunity. Plaintiff's right to be free of deliberate indifference to his medical needs was clearly established. (Id. at 18). Moreover, defendant Lozovoy was deliberately indifferent to Plaintiff's medical needs. (Id.).

### C. *Legal Standards*

#### 1. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

2. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by Plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

*D. Undisputed and Disputed Facts*

Many of the relevant facts are undisputed. On or about March 1, 2015, "Plaintiff submitted a health care services request, in which he stated that he injured his knee getting down off of the top bunk and requested a bottom bunk assignment." (Defendants' Statement of

Undisputed Fact ("DSUF") 7; ECF No. 51, p. 4). Plaintiff was seen by defendant Lozovoy on March 3, 2015. (DSUF 8; ECF No. 51, p. 5).

What happened at this appointment is disputed. Defendant Lozovoy states, under penalty of perjury, that "I noted that Randolph stated he has pain in his left knee from jumping up and down from the upper bunk and that he asked for a lower bunk chrono. I further noted that Randolph's left knee was normal in appearance, had full range of motion, and 'strength 5/5,' meaning he had full strength of his leg. Based on my evaluation, I did not determine Randolph had a medical need for a lower bunk at this time. I advised Randolph to avoid triggers and to take Motrin for pain, as needed." (ECF No. 49-8, p. 2).

Plaintiff alleges that no evaluation took place at the appointment. Plaintiff states, under penalty of perjury, that Defendant Lozovoy never touched Plaintiff's leg or asked him what his pain level was. (ECF No. 51, p. 8). Defendant Lozovoy also did not ask Plaintiff to move his leg or stand (Plaintiff arrived at the appointment in a wheelchair). (Id.).

On March 4, 2015, after submitting a health care services request Plaintiff saw Nurse Gant. (SSUF 10; ECF No. 51, p. 5). Nurse Gant noted that Plaintiff had been seen by defendant Lozovoy the day before for the same issue. (Id.). Nurse Gant also noted that Plaintiff's left knee appeared swollen as compared to his right knee. (Id.).

On March 5, 2015, Plaintiff was seen by nurse Grewal. (SSUF 11; ECF No. 51, p. 5). Nurse Grewal noted that Plaintiff had been seen by defendant Lozovoy regarding the issue. (Id.).

On March 10, 2015, after additional health care services requests and appointments, Plaintiff was seen by his primary care provider, Dr. Chen (SSUF 14; ECF No. 51, p. 6). "On March 10, 2015, Dr. Chen wrote an order prescribing Plaintiff a temporary lower bunk chrono for three months." (SSUF 15; ECF No. 51, p. 6). "On March 19, 2015, Dr. Chen completed a Comprehensive Accommodation Chrono (CDCR 7410) for a lower bunk until June 15, 2015." (SSUF 16; ECF No. 51, p. 6). "On March 20, 2015, Plaintiff was moved to a lower bunk." (SSUF 17; ECF No. 51, p. 6).

///

*E.    Analysis*

Based on the disputed facts,[1] the Court will recommend that summary judgment be denied as to defendant Lozovoy.

Plaintiff has submitted evidence that he had a serious medical need. "Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (alteration in original) (citation and internal quotation marks omitted). Here, Plaintiff has stated, under penalty of perjury, that he injured his knee coming down off his upper bunk. (ECF No. 11, p. 3). Plaintiff explained to defendant Lozovoy that he was unable to get on or off his upper bunk, and thus needed a temporary bottom bunk assignment. (Id. at 4). Because Plaintiff was unable to get down from his bunk, he defecated and urinated on himself. (Id. at 6-7). This evidence is enough to create a genuine dispute of material fact regarding whether Plaintiff's injury significantly affected his daily activities.

Plaintiff has also submitted evidence that defendant Lozovoy was deliberately indifferent to his serious medical needs. As described above, it is undisputed that Plaintiff saw defendant Lozovoy on March 3, 2015. Taking Plaintiff's evidence as true, as the Court must when analyzing Defendants' motion for summary judgment, Plaintiff came to his appointment in a wheelchair. He then told defendant Lozovoy that he was unable to get on or off his upper bunk, and thus needed a temporary bottom bunk assignment. However, defendant Lozovoy did not examine Plaintiff's knee. Instead, defendant Lozovoy fabricated a medical record stating that Plaintiff's knee was normal in appearance, had a full range of motion, and "strength 5/5."

Given the evidence that, instead of examining Plaintiff's alleged knee injury, defendant Lozovoy fabricated a medical record that, in essence, stated that Plaintiff's knee was fine, the

---

[1] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

Court finds that there is a genuine dispute of material fact regarding whether defendant Lozovoy was deliberately indifferent to Plaintiff's serious medical needs.

While in this case Plaintiff's declaration alone is enough to create a genuine dispute of material fact, the Court notes that it is undisputed that, one day later, a nurse noted that Plaintiff's left knee appeared swollen. This is some evidence that Plaintiff's version of events is true.

Next, the Court turns to Defendants' argument that Plaintiff cannot show that defendant Lozovoy's actions or inactions caused harm. It appears that Defendants raised this argument for the first time in their reply. Accordingly, the Court need not address this argument. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("[A] district court need not consider arguments raised for the first time in a reply brief"). Moreover, while Defendants are correct that Plaintiff was given medical treatment, and eventually a bottom bunk assignment, it is undisputed that defendant Lozovoy did not provide Plaintiff with a bottom bunk assignment. And, Plaintiff has submitted evidence that, after his appointment with defendant Lozovoy but before receiving a bottom bunk assignment, he was forced to urinate and defecate on himself because he could not get off of his top bunk. Thus, even if the Court were to consider this argument, there is a genuine dispute of material fact regarding whether defendant Lozovoy's failure to provide Plaintiff with a bottom bunk assignment caused Plaintiff harm.

Based on the foregoing, the Court finds that there is a genuine dispute of material fact regarding whether defendant Lozovoy was deliberately indifferent to Plaintiff's serious medical needs.

Thus, the Court turns to Defendants' argument that defendant Lozovoy is entitled to qualified immunity. In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232. As to the second prong, the dispositive inquiry is whether it would have been clear to a reasonable medical professional in defendant

Lozovoy's position that his conduct was unlawful in the situation he confronted. Wood v. Moss, 572 U.S. 744, 758 (2014).

As analyzed above, the facts shown by Plaintiff make out a violation of a constitutional right. Additionally, the right was clearly established at the time of defendant Lozovoy's alleged misconduct.

"The general law regarding the medical treatment of prisoners was clearly established at the time of the incident. *See Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.1992). Furthermore, it was also clearly established that the officers could not intentionally deny or delay access to medical care. *See Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002).

Here, taking Plaintiff's evidence as true, Plaintiff had a serious medical need when he saw defendant Lozovoy. However, defendant Lozovoy did not examine Plaintiff. While this alone might not show that defendant Lozovoy intentionally denied or delayed access to care, Plaintiff's evidence also suggests that, after failing to examine Plaintiff, defendant Lozovoy fabricated a medical record stating that Plaintiff's knee was fine. Based on the case law described above, the Court finds that it would have been clear to a reasonable prison medical professional in Defendant's position that fabricating a medical record to state that a prisoner was fine, even though the medical professional never examined the prisoner (who was complaining about a serious medical issue), violates that prisoner's constitutional rights.

Accordingly, the Court finds that defendant Lozovoy is not entitled to qualified immunity.

As the Court finds that there is a genuine dispute of material fact regarding whether defendant Lozovoy was deliberately indifferent to Plaintiff's serious medical needs, and that defendant Lozovoy is not entitled to qualified immunity, the Court will recommend that Defendants' motion for summary judgment be denied as to defendant Lozovoy.

///
///
///

**III. RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be GRANTED as to Plaintiff's claims against defendants Grewal and Chen; and

2. Defendants' motion for summary judgment be DENIED as to Plaintiff's claim against defendant Lozovoy.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __August 28, 2019__       /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE